# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F.N.B. CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>MARINER ROYAL HOLDINGS, LLC and<br>MARINER FINANCE, LLC,<br><br>    Defendants. | C.A. No. 19-1643-LPS-JLH |
| MARINER ROYAL HOLDINGS, LLC and<br>MARINER FINANCE, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>F.N.B. CORPORATION,<br><br>    Defendant. | C.A. No. 19-1859-LPS-JLH |

## REPORT AND RECOMMENDATION

These two related cases between F.N.B. Corporation ("F.N.B.") and Mariner Royal Holdings, LLC and Mariner Finance, LLC (collectively, "Mariner") arise out of a Stock Purchase Agreement. (C.A. No. 19-1643, D.I. 1; C.A. No. 19-1859, D.I. 2, Ex. 1.) The Stock Purchase Agreement set forth how the final purchase price was to be calculated, and it contained a dispute resolution mechanism that required the parties to send any disputed calculations to an independent accounting firm for a final determination. (C.A. No. 19-1643, D.I. 1 ¶ 1; C.A. No. 19-1859, D.I. 2, Ex. 1 ¶ 3.) The parties used the dispute resolution mechanism. F.N.B. now seeks an order declaring the independent accounting firm's determination void and Mariner seeks an order affirming it. (C.A. No. 19-1643, D.I. 1 ¶ 8; C.A. No. 19-1859, D.I. 2, Ex. 1 ¶ 13.) The dispute currently before the Court, however, is whether these actions were filed in or removed to this Court

in contravention of the agreement's forum selection clause. (*See* C.A. No. 19-1643, D.I. 11, D.I. 18, D.I. 23; C.A. No. 19-1859, D.I. 8, D.I. 10, D.I. 15.)

Because the forum selection clause mandates that these actions proceed in the Delaware Court of Chancery unless it lacks subject matter jurisdiction, and because it is appears to me that the Court of Chancery has subject matter jurisdiction, I recommend that Mariner's Motion to Dismiss (C.A. No. 19-1643, D.I. 8) and Mariner's Motion to Remand (C.A. No. 19-1859, D.I. 7) be GRANTED.

## I. BACKGROUND[1]

F.N.B. is a Pennsylvania corporation that owned and operated Regency Finance Company ("Regency Finance"). Regency Finance is a consumer finance company that provides loans to consumers with limited access to credit. (C.A. No. 19-1643, D.I. 1 ¶¶ 9, 17.) On June 7, 2018, F.N.B., Regency Finance, and Mariner entered into a stock purchase agreement ("SPA"). Pursuant to the SPA, F.N.B. agreed to sell F.N.B's stock in Regency Finance to Mariner. (*Id.* ¶ 31; D.I. 11, Ex. 1 (SPA) § 2.1.)[2] In return, Mariner agreed to pay $7.3 million plus the amount of the "Estimated Closing Net Assets" of Regency Finance, subject to post-closing adjustments, as well as pay off certain debt of Regency Finance. (C.A. No. 19-1643, D.I. 1 ¶¶ 32, 35-36; SPA § 2.2.)

---

[1] I assume the facts alleged in the Amended Complaint to be true for purposes of resolving the motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The parties do not dispute the facts relevant to deciding the pending motions. Accordingly, for simplicity's sake and to avoid confusion, this Report and Recommendation primarily cites to F.N.B.'s complaint in C.A. No. 19-1643.

[2] In resolving a motion to dismiss, the Court may consider facts alleged in the complaint and its attachments, matters of public record, and "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This dispute arises from the SPA, and neither party has argued that I cannot consider it in resolving the pending motions.

The SPA requires that, as soon as practicable after the closing, F.N.B. must deliver a post-closing statement that contains its post-closing calculations. (SPA § 2.5(a).) Mariner can dispute F.N.B.'s calculations by sending a Notice of Disagreement within a certain period of time. (SPA § 2.5(b).) Section 2.5(c) of the SPA provides a dispute resolution mechanism, under which disagreements between the parties about the post-closing calculations must be submitted to an independent accounting firm for resolution:

> Buyer and Seller shall promptly commence good faith negotiations with a view to resolving all Disagreements not accepted or deemed accepted by Buyer. Any Disagreements that cannot be resolved between Buyer and Seller (as evidenced by a written agreement between Buyer and Seller) within the thirty (30) days following the delivery to Buyer of the Notice of Disagreement shall thereafter be referred to the Independent Accounting Firm for a resolution of such Disagreement in accordance with the terms of this Agreement. Buyer and Seller shall instruct the Independent Accounting Firm that the determinations of such firm with respect to any Disagreement shall be rendered within fifteen (15) days after referral of the Disagreement to such firm or as soon thereafter as reasonably possible. Such determinations shall only be made with respect to the items that remain the subject of the Disagreement on the basis of written position papers submitted by Buyer and Seller (i.e. not on the basis of independent review), shall with respect to each item be made within the range of the disputed amounts claimed by Buyer and Seller in the position papers submitted, and shall be final and binding upon the Parties. Each of Buyer and Seller shall use its reasonable best efforts to cause the Independent Accounting Firm to render its determination within the fifteen (15)-day period described above, and each shall cooperate with such firm and provide such firm with reasonable access to books, records, personnel and representatives of it and such other information as such firm may reasonably require in order to render its determination. . . .

(SPA § 2.5(c).)

The SPA also contains a forum selection clause, which provides as follows:

> This Agreement shall be governed and construed in accordance with the internal laws of the State of Delaware applicable to contracts made and wholly performed within such state, without regard to any

>applicable conflicts of law principles. The Parties hereto irrevocably submit to the exclusive jurisdiction of the Delaware Court of Chancery or, *if (but only if)* such court does not have subject matter jurisdiction over such suit, action or proceeding, of the United States District Court for the District of Delaware over any suit, action or proceeding arising out of or relating to this Agreement or the Transaction. . . .

(SPA § 10.9 (emphasis added).)

In accordance with the SPA, F.N.B. provided Mariner with a post-closing statement containing its calculation of the Closing Net Assets. (*Id.* ¶ 53.) Mariner provided F.N.B. with a Notice of Disagreement disputing a number of items on the post-closing statement. (*Id.* ¶¶ 56-58.) F.N.B. formally responded. (*Id.* ¶ 62.) Finding themselves at an impasse, the parties referred their disagreements to an independent accounting firm, as provided for in Section 2.5. (*Id.* ¶ 66.) According to F.N.B.'s Complaint, the independent accounting firm sided with Mariner on several issues, "resulting in a windfall" to Mariner. (C.A. No. 19-1643, D.I. 1 ¶¶ 74-92.)

Unhappy with the independent accounting firm's determinations, F.N.B. filed suit in this Court on September 3, 2019. Its Complaint seeks (1) damages for breach of contract, (2) a declaration that the independent accounting firm's determination on one issue is null and void and requiring resubmission of that issue to the independent accounting form for a determination consistent with the Court's instructions, and (3) a declaration that three items submitted to the independent accounting firm were not appropriate subjects for its determination, rendering its determinations on those subjects null and void. (*Id.* ¶¶ 96-108.) Mariner moved to dismiss F.N.B.'s Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to comply with the forum selection clause. (C.A. No. 19-1643, D.I. 8, D.I. 11.)

Subsequently, on September 30, 2019, Mariner filed its own action in the Delaware Court of Chancery seeking to confirm the independent accounting firm's determination as an arbitration

4

award.  (*Mariner Royal Holdings, LLC, et al. v. F.N.B. Corporation*, C.A. No. 2019-0781-TMR (Del. Ch.).)  On October 3, 2019, F.N.B. removed that action to this Court.  (C.A. No. 19-1859, D.I. 2.)  Mariner filed a motion to remand, again arguing that the forum selection clause requires that case to be litigated in the Court of Chancery.  (C.A. No. 19-1859, D.I. 7, D.I. 8.)

Briefing for Mariner's motion to dismiss was complete on November 8, 2019 (C.A. No. 19-1643, D.I. 23), and briefing for Mariner's motion to remand was complete on November 8, 2019 (C.A. No. 19-1859, D.I. 15).  Both parties requested oral argument on both motions (C.A. No. 19-1643, D.I. 20, D.I. 22; C.A. No. 19-1859, D.I. 12, D.I. 14), and I heard oral argument on February 26, 2020.  ("Tr._".)

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Courts may treat a motion to dismiss based upon enforcement of a forum selection clause as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *LCY Chem. Corp. v. Kraton Performance Polymers, Inc.*, No. 14-1279-GMS, 2015 WL 4486783, at *2 (D. Del. July 23, 2015) (*citing Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298–99 (3d Cir. 2001)).

### B. Motion to Remand

Motions to remand are governed by 28 U.S.C. § 1447(c).  "[A] forum selection clause can properly be the basis of remand."  *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1215-16 (3d Cir. 1991) ("[I]f a defendant has removed a case in violation of a forum selection clause, remand is a

5

particularly appropriate and effective remedy for the wrong."). That is because a forum selection clause specifying that a party may bring an action in a state court effectively constitutes a waiver of the right to remove. *See id.* at 1216-18.

## III. DISCUSSION

The parties agree that the SPA's forum selection clause requires them to bring their disputes over the independent accounting firm's determination to the Court of Chancery if that court has subject matter jurisdiction. (Tr. 8:10-16, 18:8-14; SPA § 10.9 ("The Parties hereto irrevocably submit to the exclusive jurisdiction of the Delaware Court of Chancery or, if (but only if) such court does not have subject matter jurisdiction over such suit, action or proceeding, of the United States District Court for the District of Delaware.").)

The parties disagree about whether the Court of Chancery has subject matter jurisdiction. F.N.B. argues that the Court of Chancery lacks subject matter jurisdiction and that it properly filed suit in this Court. Mariner argues that the Court of Chancery can exercise jurisdiction over the parties' disputes in accordance with one or more of the following: (1) its jurisdiction under 10 Del. C. §§ 5701 and 5702 to review arbitration decisions; (2) its jurisdiction under 8 Del. C. § 111 to interpret, apply and enforce provisions of any instrument or agreement to which a corporation and one or more holders of its stock are parties and pursuant to which its stock is sold; and (3) its jurisdiction over disputes that are equitable in nature. (C.A. No. 19-1643, D.I. 11 at 1-2; C.A. No. 19-1859, D.I. 8 at 1.) Mariner further argues that the Court of Chancery should determine the scope of its subject matter jurisdiction, not this Court. (C.A. No. 19-1643, D.I. 11 at 10 n.5; C.A. No. 19-1859, D.I. 8 at 6 n.2.)

As an initial matter, I agree with Mariner that the scope of the Court of Chancery's subject matter jurisdiction is a matter best left to the state courts. *Cf. LCY Chem. Corp.*, 2015 WL

4486783, at *4 n.2 ("It is ultimately the province of the Chancery Court to determine whether the Combination Agreement meets the requirements under the DGCK to provide subject matter jurisdiction."); *Fort James Corp. v. Beck*, No. 02-1612-SLR, 2003 WL 345350, at *1 (D. Del. Feb. 12, 2003) ("The jurisdiction of the Delaware courts is a matter that must be decided by the Delaware state courts including the Delaware Supreme Court—not the federal district court."). Determining whether the Chancery Court has subject matter jurisdiction requires the interpretation of the Delaware Code, and that court is clearly better suited to interpret law concerning its own jurisdiction. Moreover, it is extremely doubtful that this Court's determination of the Court of Chancery's subject matter jurisdiction would be viewed as binding by that court even in the context of this dispute.

That said, having reviewed the cases cited by the parties, it appears to me that the Court of Chancery has jurisdiction over this dispute pursuant to its authority under 10 Del. C. §§ 5701 and 5702 to enforce arbitration decisions.[3] *See, e.g.*, *Agiliance, Inc. v. Resolver SOAR, LLC*, No. 2018-0389-TMR, 2019 WL 343668 (Del. Ch. Jan. 25, 2019) (finding that a dispute resolution provision requiring submission of the parties' disputes "for arbitration by a nationally-recognized accounting firm" constituted an agreement to arbitrate); *SRG Global, Inc. v. Robert Family Holdings, Inc.*, No. 5314-VCP, 2010 WL 4880654, at *5 (Del. Ch. Nov. 30, 2010) (finding that an agreement to refer disputes to an environmental expert constituted an arbitration, notwithstanding the absence of the word "arbitration" in the agreement); *Mehiel v. Solo Cup Co.*, No. 06C-01-169JEB, 2007

---

[3] As it appears to me that the Court of Chancery has jurisdiction on that basis alone, I do not address Mariner's other arguments. I note, however, that the parties vigorously dispute whether the Court of Chancery can, under certain circumstances, exercise jurisdiction under 8 Del. C. § 111 over disputes arising under a stock sale agreement where both the seller and the corporation whose stock was sold are non-Delaware corporations. (*See* Tr. 16:2-16 (Mariner stating that it is "an issue of first impression" in the Court of Chancery).)

WL 901637, *2-3 (Del. Super. Ct. Mar. 26, 2007) (contract provision requiring submission of matters in dispute to a "neutral auditor" constituted an agreement to arbitrate); *Nash v. Dayton Superior Corp.*, 728 A.2d 59, 60 (Del. Ch. 1998) (treating as an arbitration a post-closing dispute resolution mechanism requiring submission of disputed matters to an "independent national accounting firm"), *abrogated on other grounds by Viacom Int'l Inc. v. Winshall*, 72 A.3d 78 (Del. 2013).

F.N.B. argues that the Court of Chancery lacks jurisdiction under 10 Del. C. §§ 5701 and 5702 because the SPA's dispute resolution procedure is an "expert determination," not an arbitration. In support of its position, F.N.B. cites to a different line of cases from the Court of Chancery. Those case are distinguishable because the contract language demonstrated the parties' intent to engage in an expert determination. *See, e.g.*, *Penton Bus. Media Holdings, LLC v. Informa*, No. 2017-0847-JTL, 2018 WL 3343495, *13, 16 (Del. Ch. July 9, 2018) (dispute resolution mechanism requiring submission to an accounting firm did not constitute an arbitration where the agreement stated that "the Accounting Firm shall be acting as an accounting expert only and not as an arbitrator"); *Ray Beyond Corp. v. Trimaran Fund Mgmt, L.L.C.*, No. 2018-0497-KSJM, 2019 WL 366614, at *3, 8 (Del. Ch. Jan. 29, 2019) (dispute resolution procedure did not constitute an arbitration where the agreement designated the independent accountant "an expert, not an arbitrator"); *Kielhorn v. Thermo Fisher Sci. Inc.*, C.A. No. 2018-0063-JTL, Transcript of Hearing at 12, 39, 55 (Del. Ch. Nov. 9, 2018) (provision in patent license agreement was closer to an expert determination, not an arbitration, where it required the parties to submit to a "Mediator" with ten years' experience in European patent prosecution a narrow dispute about whether a patent application had been allowed "without a significant change," and where the limited exchange of information was more akin to an expert determination).

Although the law in Delaware does appear to be evolving (Tr. 13:24-14:19) (another reason why such a determination is best left to the Court of Chancery), I am persuaded that the SPA at issue here, which lacks specific language disavowing arbitration, and which permits the accounting firm reasonable access to information, more closely resembles the arbitration provisions in *SRG Global* and *Nash*, than the expert determination provisions in *Penton* and its progeny.

Because F.N.B.'s action seeks to void the independent accounting firm's decision and Mariner's action seeks to confirm it, I conclude that, if appropriate for this Court to make such a determination, the Court of Chancery has subject matter jurisdiction over these disputes under 10 Del. C. §§ 5701 and 5702. However, since it is ultimately the province of the Court of Chancery to determine its own subject matter jurisdiction, I recommend that F.N.B. be granted leave to refile its Complaint in Civ. A. No. 19-1643 if the Chancery Court determines it does not have jurisdiction.

### III. CONCLUSION

For the foregoing reasons, I recommend that Mariner's motion to dismiss F.N.B.'s Complaint in Civ. A. No. 19-1643 (D.I. 8) be GRANTED without prejudice to refile if the Chancery Court determines that it does not have jurisdiction over the dispute. I further recommend that Mariner's motion to remand in Civ. A. No. 19-1859 (D.I. 7) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: March 26, 2020

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE